**Lawrence HILL, Plaintiff–Appellant (90–3923), Cross–Appellant (90–3826),**

v.

**Ronald C. MARSHALL, Defendant,**

**Terry Morris, Defendant–Appellant (90–3803), Cross–Appellee.**

**Nos. 90–3803, 90–3826 and 90–3923.**

United States Court of Appeals, Sixth Circuit.

Argued Sept. 27, 1991.

Decided May 1, 1992.

Rehearing En Banc Denied July 23, 1992.

Lawrence A. Glassman (argued and briefed), Frost & Jacobs, Cincinnati, Ohio, for plaintiff-appellant cross-appellant.

Anthony J. Celebrezze, Jr., Robert L. Griffin, Asst. Atty. Gen., (argued and briefed), Cheryl F. Jorgensen, Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendant, defendant-appellant cross-appellee.

Before: MARTIN and JONES, Circuit Judges; and BROWN, Senior Circuit Judge.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff Lawrence Hill, an Ohio inmate, appeals the district court's order of remittitur of his entire punitive damages award, in a civil rights action under 42 U.S.C. § 1983 (1988). Hill charges the defendant, Terry Morris, the Deputy Superintendent of Treatment at the institution in which

Hill is imprisoned, with cruel and unusual punishment violative of the Eighth Amendment, by way of improper inmate medical care. Defendant cross-appeals, challenging, on several grounds, the judgment on the jury verdict for plaintiff. For the reasons that follow, we reverse the district court's "remittitur" and affirm in all other respects.

### I.

The facts of this case are hotly disputed. Both parties agree that, in May of 1981, Hill experienced an illness that included some symptoms of tuberculosis, and that these symptoms prompted those individuals in charge of his health at the Hamilton County Jail in Cincinnati, Ohio to administer a pure-protein-derivative ("PPD") tuberculin skin test. The results of this test were positive. The positive result did not signify, however, that Hill had active tuberculosis, the disease itself, but rather that the tuberculin bacteria were in his body and that without prevention they could become active. The preventative medicine prescribed to Hill was Isoniazid ("INH"), at 300 milligrams per day, and Vitamin B–6, at one tablet a day, for one year. Hill's expert testified that a patient could be worse off, however, if the INH is taken erratically rather than regularly, because the bacteria could build up an immunity to the drug that would make active tuberculosis harder to treat, if the disease did in fact develop.

Hill began taking his medication in July of 1981. At the end of that month, he was transferred from the Hamilton County Jail to the Columbus Correctional Facility, where he was reexamined and again prescribed 300 milligrams of INH to be taken daily until July 28, 1982.

Two months later, on October 1, 1981, he was again transferred, this time to the Southern Ohio Correctional Facility ("SOCF"), where Morris, the defendant, was the Deputy Superintendent of Treatment. Upon his arrival, Hill's medication was confiscated, a matter of routine procedure at SOCF. He was issued a new prescription, continuing the old one, by Nurse Imogene Ferguson. This prescription was entered into the proper records, according to Morris.

At this point, the claims of Hill and Morris diverge widely. Hill alleges that he was told that he would receive his medication at SOCF by standing in the "pill line,"[1] but that he took this action day after day and never received his prescription. Even after complaining and sending "kites"—informal written complaints—to the infirmary administrator and to Morris, his problem was ignored and he continued to be deprived of his medication. The situation finally provoked him to file this lawsuit.

Morris, on the other hand, claims that all of Hill's records were properly filed and current, and that they contained no notations of withholding or stopping Hill's prescription. Morris claims that, if the proper records existed, there would be no reason that Hill would not receive his medication.

Indeed, one of the nurses who works the pill line testified that she had never seen Hill before the deposition for this trial, which might suggest that, whether there was medication available for Hill or not, he never came to claim it. On the other hand, the implications of that testimony are diminished in that there are no notations in the SOCF records that Hill was a "no-show"—that there was medication prepared for Hill at the station that he never picked up. Moreover, other nurses at that station testified that Hill had prescriptions besides the one for INH that he should have picked up at the pill line, and there were no no-shows noted for those medications either.

The only reference in Hill's file concerning INH was a notation that Hill made an inquiry on December 8, 1981 to a Nurse Jackie Buffington, which she immediately investigated. She testified that her investi-

---

**1.** The term "pill line" refers to the line at the station where inmates' medication is handed out three times a day.

gation revealed that the INH was at the pill line for Hill, at which point Hill told her he did not know how to get his medication from the pill line.

Hill also offered circumstantial evidence in support of his claim. This evidence tended to show that the facility's health care system was poorly run in general. A report was compiled and written by Shirley Pope, Senior Research Associate for the Correctional Institution Inspection Committee ("Committee"). The Committee was established by the Ohio legislature for the express purpose of making such reports. Her research showed that many inmates complained about not receiving medicaments, such that SOCF had a pervasive pattern of failing to provide proper medication for inmates. Furthermore, Morris himself testified that the pill line was closed sometimes when it should have been open, that prescriptions were not always filled or received by inmates, and that prescriptions were sometimes altered or destroyed by the head nurse without a doctor's approval. Morris further testified that he knew of all of these circumstances and for months—during the very period in which Hill was allegedly not receiving his medication—he did little or nothing about it.

Hill filed this pro se § 1983 action on December 20, 1982 against the following parties: Ronald Marshall, then Superintendent of SOCF; Morris, then Deputy Superintendent of Treatment; Jerry Wente, then SOCF Infirmary Administrator; and James Rhodes, then Governor of Ohio. Hill claimed that SOCF, by denying him his medication, had subjected him to cruel and unusual punishment in violation of his Eighth Amendment rights. The case went to trial in July of 1986, with Hill represented by a court-appointed attorney. The court dismissed Rhodes and Marshall; subsequently, the jury returned a general verdict in favor of the remaining two defendants, including Morris. Hill moved for judgment notwithstanding the verdict or, alternatively, for a new trial. This motion was denied, so he appealed to this court.

In November 1988, this court reversed the district court's decision denying Hill's motion, 861 F.2d 720. The court remanded for a new trial, holding that the district court had erred in categorically excluding from evidence the circumstantial evidence contained in the Committee report, which plaintiff needed to prove a pervasive pattern of wrongdoing. Upon remand, the case went to trial in March 1990. Defendants Morris and Wente twice moved for a directed verdict; however, the court submitted the case to the jury on special interrogatories. The jury found that Morris had been deliberately indifferent to Hill's medical needs. On this ground, the jury returned a unanimous verdict finding Morris liable to Hill for $95,000 in compensatory damages and $900,000 in punitive damages.

Morris moved for judgment notwithstanding the verdict or for a new trial, and for remittitur of damages. The district court conditionally granted Morris's motion for new trial, unless Hill would agree to take a remittitur of the entire amount of the punitive damages award. He reluctantly agreed, reserving the right to appeal. Defendant Morris appealed his liability and the denial of his motion for judgment notwithstanding the verdict on various claims of error in August 1990. In September 1990, Hill appealed the remittitur. These appeals were consolidated before this Court.

Hill's appeal raises only the issue of whether the district court erred in granting the remittitur. Morris raises five issues on appeal: (1) whether he can properly be held liable in his supervisory capacity, (2) whether the district court erred in failing to grant Morris's motion for judgment notwithstanding the verdict or for a new trial, (3) whether the district court abused its discretion in admitting certain prejudicial material into evidence, (4) whether Hill's counsel's conduct prejudiced the jury such that Morris did not receive a fair and impartial trial, and (5) whether the compensatory damages award is supported by the weight of the evidence. We address the issues raised by Morris seriatim and, lastly, Hill's remittitur issue.

## II.

■ Morris first asks this Court to hold that he cannot be held liable in his supervisory capacity. We decline to so hold.

Morris argues that, because *respondeat superior* does not provide a basis for imposing liability upon a municipality in a § 1983 action, *see Monell v. Dep't of Social Serv.,* 436 U.S. 658, 693–95, 98 S.Ct. 2018, 2037–38, 56 L.Ed.2d 611 (1978), he cannot be held liable in the instant case, as Hill did not plead and prove Morris's direct personal involvement. According to Morris, *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), establishes that the mere failure to act, even in the face of a statistical pattern of misconduct, is an insufficient basis for holding a supervisor liable for the constitutional violations of her employees. *Id.* at 375–76, 96 S.Ct. at 606.

Hill does, however, allege that the defendant personally ignored his complaint. Moreover, the evidence supports this allegation. Morris, by his own admission, had referred inmates' complaints of not getting medication to the head nurse, the very person whom he knew to be wrongly altering and destroying some of the inmates' prescriptions. J.A. at 605–06, 632–39. Thus *Goode* is distinguishable from the instant case. In *Goode,* the defendants were charged with "fail[ing] to act in the face of a statistical pattern" of governmental employee misconduct. *Id.* Here, by contrast, Morris is charged with abandoning the specific duties of his position—reviewing and responding to inmates' complaints about medical needs—in the face of actual knowledge of a breakdown in the proper workings of the department. Hill does not seek to hold Morris vicariously liable for the head nurse's misconduct. Rather, Morris *personally* had a job to do, and he did not do it. His failure to do his job resulted directly in a violation of the plaintiff's Eighth Amendment right.

■ Morris also urges this Court to find that *Will v. Michigan Department of State Police,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), precludes Hill's damages claims against him. He relies on this circuit's opinion in *Rice v. Ohio Department of Transportation,* 887 F.2d 716 (6th Cir.1989), in which we held that "[t]he capacity in which the individual defendants were in fact acting is what matters, not the capacity in which they were sued." *Id.* at 719. *Rice* is no longer good law, however, because the Supreme Court vacated the opinion. *Rice v. Ohio Dep't of Transp.,* —— U.S. ——, 110 S.Ct. 3232, 111 L.Ed.2d 744 (1990). Moreover, the Supreme Court has since decided *Hafer v. Melo,* —— U.S. ——, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991), in which the court clarified its decision in *Will. Hafer* holds that "the phrase 'acting in their official capacities' is best understood as a reference to the capacity in which the state officer is sued, not the capacity in which the officer inflicts the alleged injury." *Id.* 112 S.Ct. at 362 (quoting *Will,* 491 U.S. at 71, 109 S.Ct. at 2311–12). There can be no further doubt that Hill's action for damages against Morris in his personal capacity, *for actions taken in the course of his office,* is proper; Morris can be held liable for damages for those actions.

## III.

■ Morris next raises the question whether the district court erred in failing to grant his motion for judgment notwithstanding the verdict or for a new trial. The standard of review of a motion for judgment notwithstanding the verdict is whether there is sufficient evidence to raise a question of fact for the jury. *Morelock v. NCR Corp.,* 586 F.2d 1096, 1104 (6th Cir.1978), *cert. denied,* 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). The appellate court considers this question de novo. *Id.* at 1104–05. Morris contends that a reasonable jury could not conclude that he was deliberately indifferent to Hill's medical needs. Morris argues that an allegation that he failed to respond to *one* complaint cannot be the basis for a finding of a premeditated lack of concern.

We disagree with Morris's characterization of this issue. The jury's finding is not supported solely by the fact that Hill's kite went unanswered. Also of great sig-

nificance in this case is the fact that Hill was able to offer strong proof of a pervasive pattern of indifference to the inmates' medical needs generally.

In *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court established the deliberate indifference standard:

> [D]eliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

*Id.* at 104, 97 S.Ct. at 291 (citation omitted) (footnotes omitted). In *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989), the Court applied the deliberate indifference standard to the failure of a city adequately to train its police officers to deal with the medical needs of those being held in custody. The Court held that where "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, ... the policymakers of the city can be reasonably said to have been deliberately indifferent to the need." *Id.* at 390, 109 S.Ct. at 1206; *see Berry v. City of Muskogee,* 900 F.2d 1489, 1496 (10th Cir.1990) (holding that "an official or municipality acts with deliberate indifference if its conduct (or adopted policy) disregards a known or obvious risk that is very likely to result in the violation of a prisoner's constitutional rights"). Although the *Canton* and *Berry* cases differ from the case at bar in that they concern municipalities and policies of indifference, we find them useful in determining the perimeters of "deliberate indifference." In this case, Morris's failure to do his job—to review and respond to inmates' medical needs—was so likely to result in the violation of the inmates' constitutional rights that we find that he was deliberately indifferent to their serious medical needs. Accordingly, the district court committed no

error in denying Morris's motion for judgment notwithstanding the verdict.

## IV.

■ The third issue that Morris raises is whether the district court abused its discretion in admitting certain evidence, on the grounds that, under Federal Rule of Evidence 403, the evidence should have been excluded as prejudicial. In particular, Morris claims that references to Hill's increased risk of developing active tuberculosis, testimony relating to the actions of Nurse Ferguson, the complaints of other inmates, and Pope's testimony and report were misleading and prejudicial.

We review the district court's admission of such material under an abuse of discretion standard. *Zamlen v. City of Cleveland,* 906 F.2d 209, 215 (6th Cir.1990), *cert. denied,* — U.S. ——, 111 S.Ct. 1388, 113 L.Ed.2d 444 (1991). Even if the lower court abused its discretion, its ruling will not be disturbed on appeal if it did not result in a substantial injustice. *Id.* at 216. There was no such injustice here. Rule 403 states that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403. None of the evidence to which Morris objects was *substantially* outweighed by the danger of unfair prejudice or confusion. Contrary to Morris's contention, Hill did not have to show a more than 50% risk of developing active tuberculosis, only that his risk had increased due to the deprivation. *See Westlake v. Lucas,* 537 F.2d 857, 860 n. 4 (6th Cir.1976) (holding that the trier of fact should consider, inter alia, "the possible consequences to the prisoner of failing to provide [the needed] medical attention"); *Clark v. Taylor,* 710 F.2d 4, 14 (1st Cir. 1983) (where plaintiff's increased risk of developing bladder cancer—up from one in ten thousand to one in ten—was compensable). Evidence relating to Ferguson's misconduct was clearly quite relevant to Hill's claim, and was in no way outweighed by

any slight possibility of confusion claimed by Morris. Pope's report, which was authorized by the Ohio legislature, was both informed and informative, and was properly admitted expert testimony.[2] If anything, the district court may have erred in allowing some overly repetitious presentation of evidence, but to the extent that this is true, we believe it did not result in a substantial injustice.

## V.

■ Morris alleges next that the conduct of Hill's counsel was such that the jury was unfairly prejudiced, necessitating a new trial. Hill's counsel repeatedly referred to active tuberculosis, for which the district court judge admonished him. Counsel also pursued a line of questioning with two witnesses after being told by the district court that the questions were improper. Morris argues that, despite the fact that " '[t]he trial court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record,' " City of Cleveland v. Peter Kiewit Sons' Co., 624 F.2d 749, 756 (6th Cir. 1980) (quoting Harris v. Zurich Ins. Co., 527 F.2d 528, 531 (8th Cir.1975)), where misconduct is pervasive and has improperly influenced the jury, it is this Court's duty to set the verdict aside.

The district court has discretion as to what statements and arguments counsel may make at trial. Id. Having surveyed the five volume record, we cannot say that the district court abused its discretion. The district court seemed at times to have had some problems in getting its message across to Hill's attorney; however, nothing was said that was so improper or inflammatory as to warrant our granting a new trial.

## VI.

Finally, Morris alleges that the evidence does not support the award of $95,000 in compensatory damages. He argues that Hill had no compensable loss. Morris also insists that Hill should have "mitigated his damages" by seeking help from a psychiatrist for the mental anguish Hill claims he had and has. Moreover, Morris cites two cases—one a wrongful death and one an amputation—in which the jury awards were $50,000 and $30,000 respectively, as indicating that this award was excessive. See Jones v. Wittenburg Univ., 534 F.2d 1203, 1213 (6th Cir.1976); Scharfenberger v. Wingo, 542 F.2d 328 (6th Cir.1976).

■ This court has held that a plaintiff with an Eighth Amendment claim may recover for any injury caused by a denial of medical care and any concomitant pain, suffering, or mental anguish. Parrish v. Johnson, 800 F.2d 600, 611 (6th Cir.1986). Hill has suffered an actual injury, in that he was prevented, by Morris's indifference to his medical needs, from reducing his risk of developing tuberculosis by approximately ninety percent through INH. Because he received INH for part, but not all, of the prescribed year, Hill may be in an even worse position than if he had not received INH at all, according to Hill's expert, because the tuberculosis bacteria that are in his system may have become resistant to the drug. Hill testified that he suffered a great deal of mental anguish on this account, and his testimony was supported by testimony of a fellow inmate, Johnny Flournoy. As Morris points out, a jury verdict will not be set aside or reduced as excessive unless it is beyond the maximum damages that the jury reasonably could find to be compensatory for a party's loss. Green v. Francis, 705 F.2d 846, 850 (6th Cir.1983). We do not find that such was the case in this action. There was sufficient evidence to support the jury's finding that Hill suffered $95,000 in damages; the district court's decision to allow the award to stand will not be disturbed.

## VII.

Hill, for his part, asks us to hold that the district court's decision to grant Morris a

---

2. Morris also alleges that Pope's report is inadmissible as hearsay. This claim is without merit; the report is admissible under Federal Rule of Evidence 803(8), the exception for public records and reports.

remittitur of the entire amount of the punitive damages award was error. His claim asks the Court to take two steps. First, he argues that the "remittitur" in this case was actually a judgment notwithstanding the verdict as to punitive damages and that we must therefore review it as such, as we did in the unpublished case of *Coffman v. Briggs*, No. 79–1512 (6th Cir. March 9, 1981), 652 F.2d 56 (table) (Westlaw, CTA6 database). Second, he argues that, under the standard of review for a judgment notwithstanding the verdict, the district court erred in holding that there was no evidence that would support an award of punitive damages.

■■■■ We believe that Hill is correct in arguing that whenever a court sets aside the entire punitive damages award, rather than merely the excessive portion, it has not granted a remittitur, but rather a judgment notwithstanding the verdict. This court indicated as much in *Coffman*. There the jury awarded both of the plaintiffs $20,000 each in punitive damages, in addition to compensatory damages. *Id.*, slip op. at 1. The defendants moved for a new trial or for a remittitur. The district court entered judgment upon the verdict as to liability and the compensatory damages awards, "but it 'set aside' the verdicts and judgments with respect to punitive damages on the ground that there was 'not any evidence' to support such award of punitive damages." *Id.* The *Coffman* court held that "the district judge[, in taking this action, was] in effect granting a judgment n.o.v. with respect to punitive damages." *Id.* The plaintiffs appealed the decision to "set aside" the award as a decision to grant judgment notwithstanding the verdict. Although this Court is not bound by *Coffman*, we agree with its conclusion.

A remittitur is defined as "[t]he procedural process by which an excessive verdict of the jury is reduced." *Black's Law Dictionary*, 1295 (6th ed.1990). We are persuaded by the logic implied in *Coffman*, that to eliminate or "set aside" an entire damages award—on the grounds "that there is insufficient evidence to support an award of punitive damages," J.A. at 167—

is not to "diminish" an award, but to do something much more. This court has noted that "a jury's award will not be reduced as excessive unless it is beyond the maximum that the jury could reasonably find to be compensatory for a party's loss." *Jones v. Wittenberg Univ.*, 534 F.2d 1203, 1212 (6th Cir.1976). The Supreme Court has stated that "remittitur has the effect of merely lopping off an excrescence." *Dimick v. Schiedt*, 293 U.S. 474, 486, 55 S.Ct. 296, 301, 79 L.Ed. 603 (1935). The Second Circuit has noted that what is crucial to the practice of granting remittitur is "the requirement that the court confine its role to *the removal of the excess portion of the verdict so that the 'damage calculation leaves in the judgment a portion of what the jury awarded.'*" *Shu–Tao Lin v. McDonnell Douglas Corp.*, 742 F.2d 45, 49 (2d Cir.1984) (emphasis added) (quoting *Akermanis v. Sea–Land Serv.*, 688 F.2d 898, 902 (2d Cir.1982), *cert. denied*, 461 U.S. 927, 103 S.Ct. 2087, 77 L.Ed.2d 298 (1983)).

The district court based its conditional grant of a new trial on Hill's acceptance of a "remittitur" of the whole punitive damages award. Before we can address whether the action it took was error, we wish to establish that it has given that action the wrong label. "If the court believed that the jury's verdict was unsupported by the evidence, it could have granted judgment notwithstanding the verdict to defendant. If it believed that the verdict was supportable, but that the jury's award of damages was grossly excessive, it could have fixed a remittitur amount." *De Jesus v. Banco Popular de Puerto Rico*, 918 F.2d 232, 235 (1st Cir.1990). Hill contends that the district court took the former course. Morris's only response to this contention is to point to Supreme Court and circuit precedent for the proposition that a plaintiff accepting a remittitur, even "under protest," may not challenge the remittitur on appeal, *Donovan v. Penn Shipping Co.*, 429 U.S. 648, 649, 97 S.Ct. 835, 836, 51 L.Ed.2d 112 (1977) (per curiam); *see Smith v. John Swafford Furniture Co.*, 614 F.2d 552, 553 n. 1 (6th Cir.1980), or on cross-appeal, *Woodworth v. Chesbrough*, 244 U.S. 79, 82, 37 S.Ct. 583, 584, 61 L.Ed.

1005 (1917). Although Morris may well be correct, the cases he cites are simply not applicable to the instant case, because we conclude that the district court's action constituted a judgment notwithstanding the verdict, not a remittitur, and as Hill urges, we will review it as such.

Under the standard of review for a judgment notwithstanding the verdict, again, the appellate court considers de novo whether there is sufficient evidence to raise a question of fact for the jury. *Morelock v. NCR Corp.*, 586 F.2d 1096, 1104–05 (6th Cir.1978), *cert. denied*, 441 U.S. 906, 99 S.Ct. 1995, 60 L.Ed.2d 375 (1979). If, when viewing all evidence most favorably to the opposing party, no reasonable minds could find against the moving party, judgment notwithstanding the verdict is proper. *Id.*

 After reviewing the record and hearing oral argument, we conclude that there was sufficient evidence to present a question of fact for the jury on the issue of punitive damages. Indeed, the district court has already determined, by approving the verdict awarding compensatory damages, that there was sufficient evidence to support a finding by the jury of "deliberate indifference" on the part of Morris. The Supreme Court has stated that punitive damages are appropriate under 42 U.S.C. § 1983 "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983). This circuit has phrased the standard for defendant's conduct to warrant punitive damages as grossly negligent, intentional, or malicious. *Lewis v. Downs*, 774 F.2d 711, 715 (6th Cir.1985).[3]

Three courts of appeals have held that the state of mind that meets the standard of deliberate indifference is sufficient to meet the standard for punitive damages.

*See Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 205 (1st Cir.1987); *Walsh v. Mellas*, 837 F.2d 789, 801 (7th Cir.), *cert. denied*, 486 U.S. 1061, 108 S.Ct. 2832, 100 L.Ed.2d 933 (1988); *Cooper v. Dyke*, 814 F.2d 941, 948 (4th Cir.1987). As indicated earlier, Morris was acting with deliberate indifference to Hill's constitutional rights. Evidence revealed that Morris had direct knowledge that Hill was not receiving his prescribed medicine and that Morris authorized or at least knowingly acquiesced in this deprivation. Morris testified that he knew of the problems that Hill and his fellow inmates were having in properly obtaining their medicine, but he took virtually no steps to correct the situation. It is indisputable that not receiving proper medical care can be life threatening in many cases, and could have been in Hill's case. Morris's conduct reflected a callous disregard for Hill's constitutional rights that certainly could support a verdict for *some* punitive damages. We believe that the district court's decision to set aside the jury award of punitive damages, in effect a judgment notwithstanding the verdict, was in error.

## VIII.

The district court's decision is AFFIRMED in all that Morris counts as error. On the issue of punitive damages raised by Hill, we REVERSE the district court's grant of judgment notwithstanding the verdict—called a "remittitur" by the district court—and remand the case for the district court to approve an amount of punitive damages which is reasonably supported by the evidence.

---

3. The correct standard to be applied in considering the issue of punitive damages under § 1983 is the federal one; Hill correctly argues that the district court erred in applying the Ohio standard. The case cited by the district court to support that decision, *McDaniel v. Carroll*, 457 F.2d 968, 969 (6th Cir.1972), *cert. denied*, 409 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (1973), is inapposite to the instant case. For a discussion of the correct standard see *Rowlett v. Anheuser–Busch, Inc.*, 832 F.2d 194, 207 (1st Cir.1987).