Barry Lynn WALKER, Plaintiff–
Appellant,

v.

Sandy WATKINS, County Judge
Executive, et al., Defendants–
Appellees.

No. 00–5264.

United States Court of Appeals,
Sixth Circuit.

Oct. 22, 2001.

Before KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

CLAY, Circuit Judge.

Plaintiff, Barry Lynn Walker, appeals from the order entered by the district court denying Plaintiff's motion to set aside the directed verdict entered in favor of Defendants, or alternatively for a new trial, on Plaintiff's claim filed pursuant to

42 U.S.C. § 1983 for violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment in connection with Defendants' alleged denial of critical medication to Plaintiff while he was incarcerated.

For the reasons set forth in this memorandum, the writer recommends that this Court REVERSE the district court's order and REMAND the case for a new trial.

## STATEMENT OF FACTS

### Procedural History

Following his incarceration in the Henderson County, Kentucky Detention Center on August 9, 1995, Plaintiff filed suit in the district court pursuant to 42 U.S.C. § 1983, alleging that various Defendants denied him medical treatment in violation of his Eighth Amendment rights. Plaintiff sued, among others, Henderson County Judge Sandy Watkins; the Henderson County Detention Center ("correctional facility"); Jailer Jackie Combest; as well as several deputy jailers. The original complaint also included a cause of action against several deputy sheriffs who arrested Plaintiff; however, summary judgment was granted to those defendants and that dismissal is not before the Court on appeal.

Plaintiff's § 1983 claim proceeded to a jury trial where, after the close of Plaintiff's case in chief, the district court sustained Defendants' motion for a directed verdict.[1] Plaintiff filed a motion to set aside the directed verdict and for a new trial, which the district court denied. Plaintiff filed this timely appeal.

### Facts

Plaintiff suffers from recurrent pulmonary emboli and, as a result, has a titanium vena cava filter imbedded within him and takes the medication Coumadin to prevent blood clots. Upon his arrest, Plaintiff claims that his Coumadin was seized by the arresting officers and that during the course of his stay at the correctional facility, he was denied his Coumadin. On August 26, 1995, Plaintiff was admitted to the hospital with the principal diagnosis of "atypical chest pain with supraventricular tachycardia," and a secondary diagnosis of "[l]eft ureterolithiasis and gastroenteritis ... [a]nd history of protein S deficiency leading to recurrent deep vein phlebitis and pulmonary embolism in the past, and also lumbosacral disc disease, status post-laminectomy." (J.A. at 163.) Plaintiff's symptoms upon admission were listed as "[o]nset this morning of pain in the right lung, groin, flank and minimal hematemesis with dry heaves thereafter." (J.A. at 163.)

Upon admission, Plaintiff was started on intravenous fluids together with "Heparin drip following Heparin protocol." (J.A. at 166.) When asked to explain the Heparin drip and protocol, Plaintiff's treating physician in the hospital, Dr. Sandoval, stated that Heparin is an intravenous anticoagulant used to thin the blood and is given to someone with a history of pulmonary embolism. Plaintiff received the intravenous Heparin until August 29, 1995, at which point Dr. Sandoval placed Plaintiff back on the Coumadin which is the oral anticoagulant. Dr. Sandoval also stated that the blood work done on Plaintiff upon admission in connection with his blood clotting

---

**1.** Plaintiff failed to include in the joint appendix those pages of the trial transcript wherein the district court granted Defendant's motion for directed verdict. As a result, Plaintiff's counsel was asked to provide pages 266–72 of the trial transcript to the Court; however, we remind Plaintiff of his duty to provide the Court with a complete joint appendix. *See Morales v. Am. Honda Motor, Inc.*, 151 F.3d 500, 505 n. 1 (6th Cir.1998).

time indicated results that were "not [within] an ideal range" for someone with a history of recurrent pulmonary embolism. (J.A. at 168.) Dr. Sandoval further opined that the unfavorable laboratory results may have been due to the fact that Plaintiff had not been receiving his Coumadin, or that he had not been receiving enough Coumadin.

Plaintiff was discharged on August 30, 1995, with a discharge summary indicating as follows:

> This 47–year–old white male was admitted by Dr. Z. Maddela because of severe chest pain with radiation to the neck accompanied by shortness of breath and diaphoresis [sweating]. He was noted to be in sinus bradycardia when seen in the emergency room. He also had short episodes of supraventricular tachycardia following admission. He had vomiting and diarrhea with persistent pain over the right side of the abdomen. This patient is known to have a history of protein S deficiency leading to recurrent deep vein thrombophlebitis and pulmonary embolism and is currently on Coumadin and aspirin. He was in jail prior to admission.... Chest X-ray showed no acute cardiopulmonary pathology. Lung scan showed a low probability of pulmonary embolization.

(J.A. at 164–65.)

Following his discharge from the hospital, Plaintiff filed suit against Defendants claiming that they intentionally denied him his Coumadin while he was incarcerated, despite his repeated requests for the medication, and that the denial of the Coumadin is what led to Plaintiff's hospitalization. In support of his claim, Plaintiff noted that his blood work in connection with his clotting time indicated that he was not within the acceptable range, and that he required the intravenous Heparin to put him in the acceptable range.

In ruling upon Defendants' motion for a directed verdict at the close of Plaintiff's proofs, the district court opined that

> granted, I mean, for the sake of this argument, the jailers were deliberately indifferent, that they knew that he should get this medicine, they knew that there was a substantial risk involved if he did not get this medicine and they failed to give it to him in spite of that risk, granted let's just say for purposes of this motion that establishes deliberate indifference.
>
> But you have to go further than that, and you have to also prove causation, and you have to establish that their deliberate indifference cause some harm to the plaintiff .... [Y]ou have to prove that the deliberate indifference resulted in some harm.
>
> If [Plaintiff's symptoms] related to his lack of Coumadin, I do think that you would have a claim; but you haven't established that his pain, throwing up, being hospitalized was attributable to the lack of Coumadin.....
>
> I'm going to direct a verdict.... I don't think it's necessary to even hear from the Corrections person, because that relates to deliberate indifference, and for purposes of my ruling I'm assuming—and I probably would have ruled—that there had been adequate showing of deliberate indifference. They knew of the risk, you know, their—I would have let the jury decide that at least, but I think, Mr. Walker, that you've [sic] established that the other link that we've talked about.
>
> So, I'm going to direct a verdict in favor of defendants on the plaintiff's claim....

(Trial Transcript at 266–70.)

## DISCUSSION

Plaintiff argues that the district court erred in granting Defendants' motion for a

directed verdict, and in failing to grant Plaintiff a new trial.

This court reviews the grant or denial of a directed verdict by the trial court under the same standard used by that court in determining whether or not it was appropriate to grant the motion in the first instance. We must, without weighing the credibility of the witnesses, ascertain whether the record contains sufficient evidence from which the jury could find in favor of the party against whom the motion is made. Only when ... reasonable people could come to but one conclusion from the evidence should a court grant a motion for directed verdict.

*Roh v. Lakeshore Estates, Inc.*, 241 F.3d 491, 497 (6th Cir.2001) (citations and internal quotation marks omitted).

 A prisoner states a cause of action under the Eighth Amendment "when he alleges that prison authorities have denied reasonable requests for medical treatment in the face of an obvious need for such attention where the inmate is thereby exposed to undue suffering or the threat of tangible residual injury." *Westlake v. Lucas*, 537 F.2d 857, 860 (6th Cir.1976). The *Westlake* court expounded on how one determines whether a plaintiff has met this standard as follows:

Whether a prisoner has suffered unduly by the failure to provide medical treatment is to be determined in view of the totality of the circumstances. In making this determination the trier of fact should consider the practicalities of the situation including the extent of the injury, the realistic possibilities of treatment, and the possible consequences to the prisoner of failing to provide immediate medical attention.

*Id.* at 860 n. 4. Later, in *Parrish v. Johnson*, 800 F.2d 600, 609–10 (6th Cir.1986), we held that a prisoner need not demonstrate an "actual injury" in order to obtain damages for an alleged Eighth Amendment violation. Specifically, this Court opined:

Upon further examination of the practicalities and the ramifications of requiring a prisoner to *always* establish an actual injury as a prerequisite to obtaining damages, we decline to adopt such a rule. As we have previously discussed, the Eighth Amendment protects prisoners from a wide variety of conduct. The numerous types of tortious conduct and resultant injuries which the Eighth Amendment redresses militate heavily against our adopting an actual injury standard, because we simply cannot be certain that an actual injury requirement would be reflective of the common law or an appropriate prerequisite to obtaining damages in every situation. *Cf. Doe [v. Dist. of Columbia]*, 697 F.2d [1115], 1124 n. 24 [ (D.C.Cir.1983) ] (noting that in some cases emotional distress might be inferred from an Eighth Amendment violation) .... Thus, an actual injury should only be required when it appropriately remedies the constitutional violation. Since an across-the-board actual injury requirement in the context of the Eighth Amendment presents serious problems of application and fails to consider that in some instances damages may be inferable merely from the conduct constituting the constitutional violation, we decline to hold that establishing an actual injury is a necessary predicate to receive damages for an Eight Amendment violation.

*Parrish*, 800 F.2d at 610 (citations omitted).

Relying on *Parrish*, this Court later opined in *Boretti v. Wiscomb*, 930 F.2d 1150, 1154 (6th Cir.1991), that the fact that the prisoner's wound, for which prison authorities failed to provide clean dressings or treatment, did not become infected and

healed "was not a bar to recovery" under the Eighth Amendment. The Court found the deprivation and degradation of not being provided the proper dressings was sufficient to sustain a claim. *Id.* In addition, this Court found that where the plaintiff had come forward with evidence suggesting that one of the defendants had violated her duty in refusing to dress the wound or provide pain medication, a genuine issue of material fact remained for trial as to the viability of the plaintiff's claim such that the district court had erred in granting that defendant summary judgment. *Id.* at 1156.

About one year later, we decided the case of *Hill v. Marshall,* 962 F.2d 1209, 1214 (6th Cir.1992), wherein we found that "[c]ontrary to [the defendant's] contention, [the plaintiff-prisoner] did not have to show more than 50% risk of developing active tuberculosis, only that his risk had increased due to the deprivation" of the prescribed medication used to prevent the plaintiff from developing the active form of tuberculosis. In doing so, we quoted *Westlake* with approval noting that in a claim brought under the Eighth Amendment, "the trier of fact should consider, inter alia, 'the possible consequences to the prisoner of failing to provide [the needed] medical attention[.]'" *Id.* (quoting *Westlake,* 537 F.2d at 860 n. 4).

Because the facts of *Hill* are analogous to those in the matter at hand, a more thorough discussion of that case sheds valuable light to resolution of this case. In *Hill,* the plaintiff-prisoner brought a § 1983 claim alleging violation of his constitutional rights under the Eighth Amendment resulting from the prison officials' alleged failure to provide to the plaintiff the medication prescribed to prevent him from developing the active form of tuberculosis. *See Hill,* 962 F.2d at 1211–12. The facts were contested at trial, where the plaintiff claimed that the defendants failed to provide the medication to him, while the defendants claimed that the plaintiff never showed up to take the medication when required. *See id.* The case went to trial; the district court then dismissed two of the defendants; and the jury returned a general verdict in favor of the remaining two defendants. *Id.* at 1212. The plaintiff filed a motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which the district court denied. *Id.*

The plaintiff appealed, and this Court reversed the district court's denial of the plaintiff's motion for a new trial while holding that the district court had erred in categorically excluding from evidence certain circumstantial evidence contained in a report. *Id.* A new trial was held; the district court twice denied motions for a directed verdict brought by the defendants; and the jury subsequently returned an unanimous verdict in favor of the plaintiff, awarding the plaintiff $95,000 in compensatory damages and $900,000 in punitive damages against one of the defendants. *Id.* The defendant in question moved for judgment notwithstanding the verdict or for a new trial, and for remittitur of damages. The district court conditionally granted the defendant's motion for a new trial, unless the plaintiff would agree to take a remittitur of the entire amount of the punitive damages award. The plaintiff reluctantly agreed, reserving the right to appeal. *Id.* Both parties appealed, and this Court affirmed the jury verdict in favor of the plaintiff, and reversed the district court's remittitur. *Id.* As stated, in doing so, this Court expressly noted that the plaintiff was only required to show that his risk of developing the active form of tuberculosis was increased by the defendants' failure to provide him with the prophylactic medication. *Id.* at 1214.

■ Similarly, in the matter at hand, Plaintiff need only show that Defendants' failure to provide him with his prescribed Coumadin increased his risk of developing a blood clot. Contrary to the district court's holding, Plaintiff was not required to come forward with evidence to show that the lack of Coumadin was the cause for the tangible injury of his arrhythmia, for example.[2] The district court held Plaintiff to a standard of proof not supported by the law of this Circuit. See Hill, 962 F.2d at 1214; Parrish, 800 F.2d at 610; Westlake, 537 F.2d at 860 n. 41. Indeed, Plaintiff came forward by way of testimony from Dr. Sandoval, his treating physician at the hospital, that upon admission to the hospital Plaintiff's blood work indicated that his clotting time was not within the range acceptable for someone like Plaintiff who is predisposed to recurrent pulmonary emboli, such that it was necessary to place Plaintiff on the intravenous anticoagulant, Heparin, until Plaintiff became stable and was returned back to the oral anticoagulant, Coumadin. This testimony alone was sufficient to demonstrate to a reasonable trier of fact that Defendants' deliberate indifference to Plaintiff's need for the Coumadin was compensable, in that a reasonable conclusion from Defendants' failure to provide Plaintiff with his Coumadin is that Plaintiff was more susceptible to forming a blood clot. See Hill, 962 F.2d at 1214.

As in Hill, where this Court held that the defendants' deliberate indifference to the plaintiff's need for prophylactic medication to prevent him from developing the active form of tuberculosis was compensable inasmuch as the defendants' actions increased the plaintiff's risk of developing the active form of the disease, so too a reasonable fact finder in the case at hand could find that Defendants' failure to provide Plaintiff with the Coumadin used to prevent Plaintiff from developing a blood clot increased Plaintiff's likelihood of forming a clot. See Hill 962 F.2d at 1214. The laboratory work done upon Plaintiff at the time of admission supports such an inference where the results were not within the range acceptable to someone in Plaintiff's condition. In other words, the laboratory results indicated that Plaintiff's risk of developing a blood clot was increased; this risk was likely caused by Plaintiff not receiving the Coumadin or not receiving enough of the Coumadin at the hand of Defendants; and Plaintiff therefore has demonstrated a compensable injury sufficient for his case to go to a jury. See id.

In addition, Plaintiff testified extensively about his repeated requests for his Coumadin and his concern that he was not receiving it. For example, when Plaintiff was finally able to see a doctor, he thanked the person responsible for taking him, Terry Haynes, testifying as follows:

> I said, I really appreciate you [Terry] taking me to the doctor. I said, you know, I'm getting in pretty bad shape. I said, I'm supposed to be getting this medicine [Coumadin] every day. And he said, I've been doing all I can to try to get it to you.

(J.A. at 186.) Plaintiff explained that he understood the purpose and significance of the Coumadin was to keep his blood from clotting so as to prevent a clot from forming and lodging in his heart or lungs. We therefore conclude that reasonable persons may have concluded that Plaintiff demon-

---

2. Inasmuch as the district court assumed for purposes of the directed verdict motion that Plaintiff had demonstrated deliberate indifference by Defendants in failing to provide Plaintiff with his Coumadin—and in fact stated that it likely would have affirmatively found as such—we shall do the same, thereby focusing on the district court's basis for its holding; that its, Plaintiff's failure to demonstrate a tangible injury causally related to Defendants' failure to provide the Coumadin.

strated evidence of his emotional strain from failing to receive his medication, which is also compensable under the Eighth Amendment. *See Parrish,* 800 F.2d at 610.

CONCLUSION

Plaintiff came forward with evidence to demonstrate Defendants' deliberate indifference to his medical needs and the need to provide medical care to stabilize his blood clotting time, and that his medical condition was compromised because of this indifference by way of possibly making him more susceptible to forming a blood clot, even though he had not formed a clot at the time, as well as the fact that he may have emotionally suffered as a result of not receiving his medication; we therefore conclude that the district court erred in directing a verdict. The district court's order is REVERSED and the case is RE-MANDED for a new trial.