**Cynthia Anna DAJANI, Executrix of the Estate of Lorraine Coate, on behalf of Lorraine Coate, the decedent, Plaintiff–Appellant,**

v.

**MONTGOMERY COUNTY, KENTUCKY, et al., Defendants–Appellees.**

No. 01–6207.

United States Court of Appeals, Sixth Circuit.

March 6, 2003.

Before NELSON and CLAY, Circuit Judges; and HAYNES, District Judge.*

**OPINION**

HAYNES, District Judge.

Plaintiff, Executrix of the Estate of Lorraine Coate, deceased,[1] appeals an order of the district court granting summary judgment in favor of Defendants and dismissing Plaintiff's claims for denial of medical treatment for Coate in violation of her rights under the Eighth and Fourteenth Amendments. Plaintiff asserts that material factual disputes exist on whether Defendants acted with deliberate indifference to Coate's serious medical needs during her incarceration, and such disputes require a jury trial. Based upon our review of the factual record, we **AFFIRM** the district court's order.

Lorraine Coate filed this action under 42 U.S.C. § 1983 against Defendants Montgomery County, Kentucky; Montgomery County Fiscal Court; Dewayne Meyers, individually and in his official capacity as Montgomery County Jailer; Dr. Ronald

---

* The Honorable William J. Haynes, Jr., United States District Judge for the Middle District of Tennessee, sitting by designation.

1. As discussed *infra*, Lorraine Coate, the original plaintiff, died during this litigation. The Court permitted substitution of the Executrix of her estate.

Humphrey, individually and in his official capacity as a physician for the Montgomery County Jail; Dr. Zollman Kommor, individually and in his official capacity as contract physician for the Kentucky Correctional Institution for Women (hereinafter "KCIW"); Dr. Patrick Sheridan, individually and in his official capacity as the Director of the Division of Medical Services for the Kentucky Department of Corrections (hereinafter "KDOC"); and Betty Kassulke, individually and in her official capacity as KCIW Warden.[2] Coate alleged that she was in the Defendants' custody as a state prisoner and Defendants were deliberately indifferent to her serious medical need for testing for colon cancer in violation of her rights under the Eighth and Fourteenth Amendments. Coate also asserted state law claims of negligence and medical malpractice against Defendants.

In earlier proceedings, Montgomery County Defendants (Montgomery County, Kentucky, Montgomery County Fiscal Court, and Meyers) filed a joint motion for summary judgment and later, the State Defendants Kassulke and Sheridan also submitted their joint motion for summary judgment. Coate responded to both motions and sought leave to file an amended complaint to assert State law claims against certain nurses at the KCIW.

On July 16, 1999, the district court granted the Defendants' motions for summary judgment, finding that Coate's § 1983 claims, as well as her negligence and medical malpractice claims, were barred by the statute of limitations. The district court also denied Coate's motion to amend. On appeal, we reversed the district court order, finding that Coate's claims were not time-barred and Coate's motion to file an amended complaint should have been granted.

On remand, the Defendants renewed their motions for summary judgment, contending that Coate's evidence was legally insufficient to avoid summary judgment on her Eighth Amendment claim. Coate responded to both motions, arguing that material factual disputes existed. The district court granted the Defendants' motions for summary judgment from which this appeal is taken.

## FACTUAL BACKGROUND

In April 1995, Coate, a state prisoner, was incarcerated at the KCIW, in Peewee Valley, Kentucky. While Coate was incarcerated at KCIW, she complained of nausea, vomiting, severe abdominal pain, and weight loss. At the time of Coate's incarceration. Defendant Patrick Sheridan was the Medical Director for the KDOC. Defendant Betty Kassulke was the Warden for KCIW. Dr. Zollman Kommor, a contract physician, however, actually treated Coate while she was incarcerated at KCIW.

In June 1995, Coate was transferred to the Montgomery County Jail as a Class D felon under Kentucky Revised Statute (KRS) § 532.100.[3] To schedule medical evaluations, inmates at Montgomery County Jail fill out request "slips." The slips are compiled and reviewed each day during the work week by an on duty nurse. Dr. Humphrey, the Jail's doctor under contract through the Fiscal Court, was available to the inmates on a weekly basis and made himself repeatedly available to Coate.

---

2. Coate voluntarily dismissed her claims against Defendants Humphrey and Kommor in the district court and those defendants are not involved in this appeal.

3. Pursuant to Section 532.100 of the Kentucky Revised Statutes persons convicted of a non-violent Class D felony and sentenced to five (5) years or less are to serve their term in a county facility. § 532.100(4)(a).

While at the Montgomery County Jail. Coate continued to experience abdominal pain and significant weight loss. During the four and one half months while Coate was at the Montgomery County Jail, Coate made twelve requests to be evaluated and Dr. Humphrey actually examined her on thirteen occasions. In July or August 1995, Coate had rectal bleeding and severe diarrhea. Dr. Humphrey ordered an upper GI performed at a local hospital to rule out the possibility of colon cancer. The tests were inconclusive and Dr. Humphrey further ordered a barium enema and a colonoscopy that required hospitalization at the local hospital. The tests were scheduled, but were not performed. Defendant Dewayne Meyers, the Montgomery County Jailer, told Dr. Humphrey that the tests had to be pre-approved by the KDOC.

Charles Hughes, Jail Services Specialist in KDOC's Division of Local Facilities, described the medical transfer procedure in effect at the time:

> "The jailers were always asked that if it was going to be anything more involved tha[n], you know, just something that you could take them to the hospital if there was going to be any sort of admission, any sort of procedures past just routine. And, how you define routine may be the issue that you-all need to discuss here. But anything past that, to please call us, and let us have the option of calling them into one of our facilities for a contract treatment as opposed to leaving [them] in a local facility."

(J.A. 612.) Hughes testified that routine medical care is not determined by a dollar amount, but by the procedure: "it would be some of the abnormalities that are involved, as opposed to the cost." (J.A. at 613A.) Additionally, Hughes testified that Defendant Meyers "ha[d] to take the advice of his contracted medical authority on her medical care. Dr. Humphrey gave

him that. He called Corrections, and we said we'll call her in with a written statement, which we did." (J.A. at 621A.)

On November 10, 1995, Dr. Humphrey wrote a letter to the "Corrections Department Medical Provider," explaining Coate's need for the tests within ten days. Meyers faxed his transfer request with Dr. Humphrey's letter to Charles Hughes in KDOC's Division of Local Facilities in Frankfort, Kentucky. On November 14, 1995. Hughes forwarded Meyers' request and Dr. Humphrey's letter to Judy Morris in the KDOC Division of Adult Institutions. Morris completed the transfer papers and forwarded the papers and a cover letter to Jack Stout, a Deputy Warden at KCIW. Stout then forwarded this information to Linda DeWitt, a Unit Administrator at KCIW who prepares memoranda on medical transfers and sends the papers to KCIW's medical department.

Coate was returned to KCIW on November 17, 1995. Coate's medical records were transferred to KCIW on November 17, 1995, by Mildred Meyers, an Administrative Advisor for Montgomery County Jail. It is undisputed that Dr. Humphrey's November 10, 1995 letter was received by KDOC officials at Frankfort and was placed in Coate's institutional file in the KCIW Warden's office. For reasons that are not in the record, Dr. Humphrey's November 10 letter was not placed in Coate's medical file at the KCIW medical unit nor forwarded to the KCIW medical unit.

Defendant Sheridan is primarily responsible for expedited transfers in which an inmate's medical needs require immediate transfer. Defendant Sheridan, however, was not involved with Coate's transfer, nor did he recall any request to him from Montgomery County Jail to have Coate's diagnostic procedures performed at KCIW. Sheridan explained that general

requests for transfers are forwarded to Charles Hughes or Judy Morris, over whom Sheridan does not have supervisory authority.

Through the KCIW staff, the medical department is "alerted to the fact that this is a medical transfer." (J.A. at 1127.) Sheridan did not know that Coate's transfer was a "medical transfer" (J.A. 1126–28.) and there is no evidence contradicting his testimony. Sheridan testified that "[i]t would be nice to think the medical records always came with the patient. That's not always what happens ..." (J.A. at 1130.) Plaintiff concedes that there is not any evidence that the lack of medical records of inmates at the time of medical transfers is a persistent problem at KCIW.

Coate was never informed of her possible cancerous condition and purportedly believed that her transfer back to KCIW was for treatment of double pneumonia. Coate's health problems persisted at KCIW. Unaware of Dr. Humphrey's letter. Dr. Kommor diagnosed Coate as having a mild heart problem and an abdominal hernia that did not require surgery. Given her severe weight loss, Kommor suspected that Coate was suffering from bulimia and referred her to the psychological associate at KCIW, James David Buckman. Buckman, who had access to both Coate's medical and institutional files, discovered that Coate was transferred to KCIW upon the recommendation of Dr. Humphrey, but does not remember ever reading Dr. Humphrey's letter. In any event, the tests requested by Dr. Humphrey were not performed while Coate was incarcerated at KCIW.

Coate was paroled in February 1996. In October 1996, Coate underwent a colonoscopy and was conclusively diagnosed as suffering from colon cancer when ten of her eleven lymph nodes tested as malignant. Coate died on May 4, 2002.

## ANALYSIS

Summary judgment is appropriate when there are not any genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56. Upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for a directed verdict, *Anderson v. Liberty Lobby*, 477 U.S. 242, 247–52, 106 S.Ct. 2505, 91 L.Ed.2d 202, (1986), particularly where there has been an opportunity for discovery, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In deciding a summary judgment motion, a court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir.1998).

This Court reviews *de novo* the district court's order granting summary judgment. *Terry Barr Sales Agency, Inc. v. All–Lock Co.*, 96 F.3d 174, 178 (6th Cir.1996). The judge does not "weigh the evidence and determine the truth of the matter but ... determine[s] whether there is a genuine issue for trial." *Liberty Lobby*, 477 U.S. at 249. As to Coate's claim, the issue of "whether the [defendants] were deliberately indifferent is a mixed issue of law and fact.... The resolution of this question requires us to compare the [Defendants'] conduct with a legal standard of deliberate indifference." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir.1999) (en banc).

As to whether genuine issues of material fact existed. Plaintiff argues that Montgomery County Defendants exhibited reckless disregard of Coate's serious medical needs by failing to provide for the diagnostic tests recommended by Dr. Humphrey despite the requirement of state law to provide such tests and the fact that the County Defendants had sufficient funds to pay for the tests. Plaintiff also argues

that the County Defendants exhibited deliberate indifference in their failure to ensure that the KCIW facility and its medical department were aware of Coate's need for this medical testing.

The Eighth Amendment requires the Defendants to provide adequate medical care for Coate's serious medical needs. *See Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). This Eighth Amendment claim for inadequate medical care has objective and subjective components. *Farmer v. Brennan,* 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Napier v. Madison County,* 238 F.3d 739, 742 (6th Cir.2001); *Brown v. Bargery,* 207 F.3d 863, 867 (6th Cir.2000). The objective component requires the existence of a serious medical condition. *See Farmer,* 511 U.S. at 834; *see also Estelle,* 429 U.S. at 104. The parties do not dispute that Coate had a serious medical condition that required prompt medical testing and treatment, as determined by Dr. Humphrey. Yet, in addition. Plaintiff must also prove facts showing that prison officials acted with "deliberate indifference" towards her serious medical needs. *Farmer,* 511 U.S. at 834. To establish deliberate indifference requires proof of conduct that violates "contemporary standards of decency." *Hudson v. McMillian,* 503 U.S. 1, 8, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992).

To satisfy this subjective component, an inmate must show that prison officials have "a sufficiently culpable state of mind." *Brown,* 207 F.3d at 867 (citing *Farmer,* 511 U.S. at 834).

> *[D]eliberate indifference* to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983.

*Estelle,* 429 U.S. at 104–05 (citation and footnotes omitted)(emphasis added). Deliberate indifference "should be determined in light of the prison authorities' current attitudes and conduct." *Helling v. McKinney,* 509 U.S. 25, 36, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993).

Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* Under *Farmer,* "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837; *see also LeMarbe v. Wisneski,* 266 F.3d 429, 435 (6th Cir.2001).

## A. The Montgomery County Defendants

■ The gravamen of Plaintiff's theory of the Montgomery County Defendants' deliberate indifference is their failure to administer tests that would have revealed Coate's colon cancer. Plaintiff asserts that Montgomery County Defendants chose not to provide Coate the recommended treatment in violation of state law and by not ensuring that KCIW was aware of the need for the tests Dr. Humphrey recommended.

As to the Defendant Montgomery County's legal duty to provide care. Coate, a state prisoner, was incarcerated in the Montgomery County facility as a Class D felon. Section 441.045 of the Kentucky Revised Statutes sets forth the rules for

the payment of medical expenses for state inmates and reads, in pertinent part, as follows:

(3) Except as provided in subsections (4) and (5) of this Section, the cost of providing necessary medical, dental and psychological care of indigent prisoners in the jail shall be paid from the jail budget.

(5) The cost of providing necessary medical, dental, or psychological care beyond *routine care and diagnostic services* for prisoners held pursuant to a contractual agreement with the state shall be paid as provided by the contract between the state and county. *The cost of necessary medical, dental, or psychological care, beyond routine care and diagnostic services, of prisoners held in jail or which the county receives a per diem payment shall be paid by the state.*

(7) When the cost of necessary medical, dental, or psychological care for a prisoner exceeds two thousand dollars ($2,000), as calculated by using the maximum allowable costs to similar persons or facilities for the same or similar services under the Kentucky Medical Assistance program, the state shall reimburse the county for that portion of the costs that exceeds two thousand dollars ($2000). The reimbursement shall be subject to the following terms and conditions:

(10) For the purposes of this section "necessary care" means care of a nonelective nature that cannot be postponed until after the period of confinement without hazard to the life or health of the prisoner.

(KRS 441.045.)(emphasis added) Montgomery County Jail receives a $1.75 per diem stipend for the routine medical care and diagnostic services of each prisoner.

For medical care for Class D inmates, the Montgomery County Jail's. Operations Manual states, in relevant part:

MEDICAL CARE. The jail is responsible for providing *routine medical care* for Class D inmates. *However, if an inmate is scheduled for any outpatient surgery and/or hospital admission, the Department must be notified in order to allow the Department the option of transferring the inmate to a state institution or hospital on price contract.* If an inmate is admitted to a hospital on an emergency basis, the Department shall be notified by the end of the next working day.

(J.A. 149 AD.)

Plaintiff has no evidence to establish that either the County Defendants' or the County's policy exhibited a deliberate indifference to her medical needs. A political subdivision such as Montgomery County is liable under Section 1983 only for injuries that result from an official policy or from governmental custom, even if that custom has not been formally approved. *Monell v. New York City Dep't. of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Molton v. City of Cleveland*, 839 F.2d 240, 243–44 (6th Cir. 1988). Under appropriate circumstances, a single decision by a policymaker may be sufficient to satisfy the "policy requirement" of *Monell. Pembaur v. City of Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Plaintiff fails to establish that the Medical Care policy adhered to by the Montgomery County Jail was a "policy or custom" that caused or encouraged deliberate indifference to her serious medical needs.

The facts are that a jail physician examined Coate thirteen times. At Dr. Humphrey's request, Coate underwent an upper G.I. series at a local hospital to rule out the possibility of colon cancer. The tests were inconclusive and Dr. Humphrey further ordered a barium enema and a colonoscopy to be performed at the local hospital. The tests were scheduled, but

were not performed. Defendant Meyers told Dr. Humphrey that the tests had to be pre-approved by KDOC officials, as required by the Montgomery County Jail policy governing medical care for Class D inmates. The Court does not discern any policy of deliberate indifference by the Defendant Montgomery County or Montgomery County Fiscal Court.

As to Defendant Meyers, after Dr. Humphrey ordered tests for Coate. Meyers promptly contacted the KDOC for a determination of whether the state wanted to transfer Coate to a state facility or have the tests arranged by the Montgomery County jail. Meyers also asked Dr. Humphrey to write a letter describing the medical necessity for Coate's tests. In accordance with jail policy and KDOC requirements for prior state approval, Meyer requested that Coate be transferred to a state facility. Plaintiff has not asserted that Meyers acted contrary to KDOC or Montgomery County policy in making this transfer request.

From our review of the record, Defendant Meyers acted in accord with KDOC procedures in requesting KDOC's position on the site for Coate's medical testing as ordered by Dr. Humphrey. Once Meyers received Dr. Humphrey's request, Meyers acted promptly in forwarding Dr. Humphrey's letter and a transfer request form to the KDOC. After Meyers forwarded the necessary papers and Coate left the Montgomery Count Jail, Meyers no longer possessed any authority to direct KDOC or KCIW officials. From these underlying facts, the District Court properly concluded that, as jailer, Defendant Meyers was not deliberately indifferent to Coate's medical needs.

### B. State Defendants Sheridan and Kassulke

█ Coate also asserts genuine issues of material fact existed as to whether Sheridan and Kassulke were aware of Coate's need for prompt medical testing ordered by Dr. Humphrey. According to Coate, Sheridan and Kassulke were individually involved in decisions which directly resulted in the deprivation of Coate's constitutional rights. The district court found that these Defendants did not have any knowledge of Coate's serious medical needs and lacked personal involvement or acquiescence in the alleged constitutional deprivation. Thus, the district court concluded that Coate could not prove her claim against Sheridan and Kassulke. We agree.

From the record, Sheridan had limited responsibility for arranging for medical transfers and for implementing procedures for hospital treatment of inmates. Other KDOC officials, Hughes and Morris, and KCIW officials, Stout and Dewitt, were responsible for effectuating the medical transfers, including transfer of the inmates' medical records. Kassulke likewise had supervisory responsibility for inmates' medical needs as promulgator of KCIW policies and procedures. Plaintiff's evidence, however, does not reflect that either Sheridan or Kassulke had actual knowledge of Dr. Humphrey's medical recommendation regarding Coate's treatment until after this action was filed. Because the evidence does not reflect these Defendants knew of Coate's need for the recommended tests, these Defendants could not be aware of any substantial risk of serious harm to Coate. Further, there is no evidence of any pattern or practice that these Defendants were aware that inmates sent to KCIW as "medical transferees" were otherwise denied treatment for their serious medical problems upon arrival to KCIW due to the lack of their medical records or other necessary medical information.

Conclusory allegations are legally insufficient to support a judgment of deliberate indifference. *Chapman v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986). A plaintiff must prove each defendant's personal role in the alleged violations of her rights and how each defendant's conduct caused that violation. *Dunn v. Tennessee*, 697 F.2d 121, 128 (6th Cir.1982). Under Rule 56(e) and decisional law thereunder, once the defendant makes a showing of no factual basis for the claim and/or no disputed facts, plaintiffs must come forth with specific facts to support a jury verdict and a genuine disputed issue of material fact to warrant a trial on the merits. *Cloverdale Equip. Co. v. Simon Aerials Equip. Co.*, 869 F.2d 934, 937 (6th Cir.1989); *Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986); *Davis v. Robbs*, 794 F.2d 1129, 1130 (6th Cir.1986). After a motion is filed, a plaintiff cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must "present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1389 (6th Cir.1993); *Vine v. County of Ingham*, 884 F.Supp. 1153, 1160 (W.D.Mich.1995).

Here, Coate has not provided evidence that these Defendants were aware of Coate's condition and need for testing, nor that these Defendants acquiesced in the failure to provide such testing. As to Plaintiff's damages claims against Defendants Sheridan and Kassulke in their official capacities, such a claim is against the State, which is not a person within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 64, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989).

Relying on *Hill v. Marshall*, 962 F.2d 1209 (6th Cir.1992), Coate argues that § 1983 liability attaches to Defendants Sheridan and Kassulke in their individual capacities for their complete failure to carry out the responsibility of their jobs. In *Hill*, we held that a defendant, an official in charge of treatment at an Ohio correctional facility, could be held liable for a failure to do his job. The defendant in *Hill* had actual knowledge of plaintiff's complaints that he was not receiving his medication. The defendant in *Hill* also referred the inmate to a head nurse whom the defendant knew would alter and destroy inmates' prescriptions. In *Hill*, we found the proof to reflect that the defendant abandoned the duties of his position "in the face of actual knowledge of a breakdown in the proper working of the department." *Id.* at 1213. Thus, we held that the defendant in *Hill* could be held liable for a failure to do his job. *Id.* at 1213. There is no such evidence here that these Defendants had any awareness of Coate's need for testing nor that transfer inmates were not receiving necessary medical treatment. *Hill* is factually inapposite.

In closing, while it is deeply regrettable that Coate did not receive the tests that Dr. Humphrey ordered, Plaintiff's evidence does not meet the constitutional standard to impose liability on the named Defendants.

## CONCLUSION

For these reasons, we **AFFIRM** the district court's grant of summary judgment in favor of the Montgomery County Defendants and State Defendants.