NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0469n.06

No. 14-6352

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jun 24, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MARTY R. STEVENS, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| DAVID GOOCH, et al., | ) | KENTUCKY |
| | ) | |
| Defendants-Appellees. | ) | |

**BEFORE: BOGGS** and **KETHLEDGE**, Circuit Judges; **BLACK**, District Judge.[*]

**BLACK**, District Judge.  Marty Stevens ("Stevens") appeals the district court's grant of summary judgment in favor of Defendant David Gooch, individually and in his capacity as Jailer of Lincoln County, and in favor of Defendant Lincoln County, Kentucky.  Stevens argues that the district court erred in granting summary judgment where there were facts supporting a finding that the jailer knew about Stevens's injury and failed to provide timely, adequate treatment.  We find that the district court appropriately granted summary judgment.  As such, we **affirm**.

## I.      BACKGROUND FACTS

On October 20, 2010, Stevens was arrested and taken to the Lincoln County Jail where he was delivered at approximately 10:40 p.m. to the custody of the jailer,

---

[*] The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

Defendant David Gooch. Stevens alleges that he was placed in a holding tank, where he slipped and fell on liquid that had accumulated on the floor. As a result of his slip and fall, Stevens claims that he suffered injuries to his right ankle. Stevens reported the incident to guards at the jail and requested medical attention.

After his fall, he was seen by the jail nurse, Pat Brown. She examined Stevens's ankle and determined the injury was a sprain. At that time, Nurse Brown observed that Stevens had an abscess on his arm and decided to have him transported to Bluegrass Clinic to have the abscess examined. He was seen at Bluegrass Clinic on October 21, 2010. The physician's assistant at Bluegrass Clinic, Heather Hoewing, examined the abscess on Stevens's arm. She also examined Stevens's ankle and recommended he undergo an x-ray of his ankle that same day. Howeing testified that the jail employee who accompanied Stevens to the appointment relayed to her that the recommendation for an x-ray was refused, because Stevens had not been sent to the clinic for treatment of his ankle. She documented the refusal, prescribed ibuprofen for pain, and suggested he return on October 24, 2010. Gooch testified that he would never make a decision refusing recommended medical treatment and would never authorize such a decision. Nurse Brown also testified that she would not have refused a doctor's requested treatment. It is unclear who was responsible for refusing Hoewing's recommendation to obtain an x-ray, but it is undisputed that an x-ray was not performed on October 21, 2010.

On October 25, 2010, Stevens returned to Bluegrass Clinic in follow-up for the abscess on his arm, but his chief complaint was cardiac symptoms, for which he was hospitalized overnight for observation. Hoewing did not recall looking at Stevens's ankle at this appointment, and there is no notation on the medical record concerning the ankle. Hoewing explained that the main concern at that appointment was Stevens's chest pain. Stevens again returned to the clinic on November 2, 2010, for follow-up for the abscess on his arm, and he was also complaining of anxiety. Hoewing did not recall whether she examined Stevens's ankle during this visit, and no reference is made to the ankle in the medical note. She recommended he return for follow-up treatment in two weeks.

On November 15, 2010, Stevens returned to the clinic in follow-up on the abscess, and he was complaining of ankle pain. Hoewing examined Stevens's ankle and noted that it was still swollen and weak, as well as tender along both the lateral aspect of the malleolus and medially. She noted that Stevens was, however, able to partially bear weight on the ankle. She ordered an x-ray of Stevens's right ankle, which revealed: "a moderately displaced fracture of the medial malleolus with associated soft tissue swelling." Hoewing refilled Stevens's prescription for ibuprofen and referred him to an orthopedic specialist — Cumberland Foot and Ankle. Stevens testified that his ankle was placed in an air cast, and that Guard Dennis Ray gave him crutches.

A November 16, 2010, medical note from Bluegrass Clinic states:

> PT is scheduled for referral apt. with Cumberland Foot and Ankle (at Ft. Logan Hospital in Stanford) on Dec. 7, 2010 at 8:30 a.m. Called Pat at the Lincoln County Jail and told her that even though she had not wanted to do the referral, Dr. James instructed me to make the apt. for PT and let her decide whether they would keep it. Pat was notified and said she would handle it from there.

The December 7, 2010 appointment was rescheduled to January 4, 2011. The circumstances behind the rescheduling are unclear.

While awaiting his January 4, 2011 appointment with the specialist at Cumberland Foot and Ankle, Stevens continued to report ankle pain. On November 21, 2010, he completed a "health care services request from," complaining of pain and noting that he thought his ankle was infected. The following morning, Nurse Brown examined Stevens and made an appointment with Bluegrass Clinic for November 23, 2010. On November 23, 2010, Stevens was seen by Physician's Assistant Lucas Kennedy, who noted Stevens was complaining of ankle pain, which was causing him to feel nauseous. Because Stevens required an appointment with an orthopedic specialist, Kennedy suggested that Stevens return for follow-up in one month.

On November 28 and December 10, 2010, Stevens completed a "health care services request form" noting his ankle pain and stating the pain was causing other symptoms, including high blood pressure. Nurse Brown received both requests, noted his next appointments, but only examined him on December 10, 2010, without notation of

any objective findings or subjective complaints. On December 12, 2010, Stevens again completed a "health care services request form" stating he needed to see a doctor because he thought his ankle was infected and the pain was making him sick. On December 13, 2010, Nurse Brown examined Stevens and noted that no infection was present. Nurse Brown also noted Stevens's appointment with Cumberland Foot and Ankle on January 4, 2011, and she gave him ibuprofen for the pain. Bluegrass Clinic records indicate that on December 13, 2010, Stevens's follow-up appointment scheduled for December 15, 2010 was cancelled by jail personnel.

On December 24, 2010 at 6:00 (unclear if a.m. or p.m.), Stevens completed a "health care services request form" stating he was in pain from his broken ankle, which was causing him to feel sick, and he was having trouble eating and sleeping. At approximately 8:30 p.m., officers responded to Stevens's cell where they found him on the floor with blood on his face. Stevens informed the officers that his ankle gave out on him and he fell. As a result of the fall, Stevens was transported to Fort Logan Hospital. According to the incident report, an x-ray was conducted on Stevens's ankle, which showed that the ankle was broken and would need surgery. Nurse Brown followed up with Stevens on December 27, 2011 and gave him ibuprofen for his pain.

On January 3, 2011, Stevens completed another "heath care services request form," stating that his blood pressure was high and his ankle was the cause. On January 4, 2011, Nurse Brown examined Stevens at 11:30 a.m. and noted he had an appointment

with Bluegrass Clinic at 3:10 the same day.  Bluegrass Clinic's records indicate Stevens was seen by Physician's Assistant Kennedy, and his chief complaint was pain.  Kennedy noted Stevens's tenderness over medial malleolus and also noted he was scheduled for surgery on January 7, 2011 at Fort Logan Hospital.

Stevens was also seen by Dr. Jensen at Cumberland Foot and Ankle on or about January 4, 2011.  Dr. Jensen noted joint instability, foot pain, and ankle fracture.  She ordered an MRI and noted that Stevens was to return for surgical correction.  On January 6, 2011, Nurse Brown contacted Dr. Jensen about Stevens's diagnosis and prognosis.  Nurse Brown made a note that the doctor reported that Stevens had a dislocated fracture and an unstable ankle joint, and he should not ambulate on that ankle.  Stevens underwent an MRI on January 6, 2011, which confirmed the medial malleolar fracture.  There is no indication why the surgery did not take place on January 7, 2011 as anticipated by Kennedy.  According to Stevens, the surgery was denied or rescheduled by jail personnel.

On January 12, 2011, Stevens completed a "health care services request form," stating that his ankle was getting worse and the bone was "poking out."  On January 13, 2011, Nurse Brown examined Stevens and requested a catastrophic medical transfer from the Department of Corrections ("DOC") for his ankle surgery.  On January 16, 2011, Stevens completed a "health care services request form," noting his ankle pain and stating that "the bone [was] showing – pushing up the skin."  Nurse Brown examined Stevens on January 17, 2011 and noted that she was awaiting a response from DOC on her request

for a catastrophic medical transfer. Later that same day, Nurse Brown received a response from the DOC deferring her request for catastrophic medical transfer for Stevens. Nurse Brown documented the DOC's response in a "nurse note," which reads: "DOC states that he will be a state inmate in a couple of weeks [and] they will accept him then for surgery on [right] ankle."

On January 21, 2011, Stevens again fell in the shower of his cell, causing the bone to protrude from the wound on his ankle. Stevens was transferred to Ephraim McDowell Regional Medical Center and the Medical Center ultimately sent him to University of Kentucky Hospital. According to Stevens, he underwent surgery by a Dr. Wright not to fix his ankle, but to clean the wound and stabilize and splint the fracture. Although the record is not entirely clear, Stevens's ankle was placed in either a plaster case or a "boot" after surgery. Stevens stated that the ankle was not repaired at that time because the surgeon wanted to wait to be sure there was no infection in the bone.

For the next several months, Stevens continued to complain of ankle pain. He was seen by doctors for ankle pain on February 5, 2011, March 8, 2011, March 9, 2011, March 24, 2011, and June 24, 2011. Stevens testified that "around March" of 2011, he talked to Gooch about his ankle, asking him when he was going to have surgery and why it was taking so long. Gooch testified that the conversation he had with Stevens about his ankle occurred during a state inspection on May 28, 2011. Stevens testified that Gooch

stated that he was "getting everything took care of, scheduling and everything." Stevens admitted this was the only conversation he had with Gooch about his ankle.

Nurse Johnson's notes indicate that on May 16, 2011, she called Dr. Wright's office to inquire about Stevens's surgery, and was told that the record indicated a plan for surgery but no date had been set. Her notes further indicate that surgery on Stevens's ankle had been scheduled and rescheduled multiple times for multiple reasons. A June 24, 2011 note states that after learning his surgery had been cancelled, Stevens fell again and was sent to the emergency room for an evaluation of his ankle. Nurse Johnson communicated with the hospital multiple times from May 16, 2011 to July 28, 2011 regarding the scheduling of Stevens's surgery. Nurse Johnson testified that she recalled that Stevens had been scheduled for surgery on his ankle in July 2011, but the surgery had to be rescheduled to August 12, 2011, due to staffing problems caused by another inmate's medical emergency.

Stevens alleges that he did not have surgery to repair his ankle until March 12, 2012. He alleges that he has continued to suffer from constant pain since his surgery and can only walk with the assistance of a walker or cane.

## II. STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Holloway v. Brush*, 220 F.3d 767, 772 (6th Cir. 2000) (en banc). Summary judgment is appropriate where there is no genuine issue as to any material fact and the moving party

is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The evidence must be considered in the light most favorable to the non-moving party, but there must be more than "some metaphysical doubt as to the material facts" to create a genuine issue. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That is, there must be more than a "mere existence of a scintilla of evidence" to satisfy the non-moving party's burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

## III.    ANALYSIS

Stevens alleges that Gooch was deliberately indifferent to his medical needs by obstructing and delaying treatment for his fractured ankle and that Gooch's denial of medical treatment violated his rights under the Fourteenth Amendment. Specifically, Stevens argues that the district court disregarded circumstantial evidence in reaching its decision to dismiss Gooch in his individual capacity.[1]

Stevens alleges a claim under 42 U.S.C. § 1983, arguing that Gooch was deliberately indifferent to his medical needs. To assert a cause of action arising under Section 1983, a plaintiff must demonstrate a deprivation of a constitutional right caused by a state government official. The Supreme Court has held that "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of

---

[1] Stevens does not contest the dismissal of Lincoln County, Kentucky or Mr. Gooch in his official capacity as Jailer of Lincoln County, Kentucky. (Appellant Brief at 10).

pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). The Due Process Clause provides equivalent protections to a pretrial detainee. *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th Cir. 2013). An official must have actually perceived a significant risk to an inmate's health to have violated his constitutional right. "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

A deliberate-indifference inquiry has two components, one objective and one subjective. A plaintiff satisfies the objective component by proving that he had a medical need that was "sufficiently serious." *Id*. The district court found that Stevens's alleged medical condition was sufficiently serious to satisfy the objective component.

The central question in this appeal is whether Stevens provided sufficient evidence to prove the subjective component of the deliberate indifference inquiry. A plaintiff satisfies the subjective component by proving "facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001). The subjective requirement is designed "to prevent the constitutionalization of medical malpractice claims; thus, a plaintiff alleging deliberate indifference must show more than negligence or the

misdiagnosis of an ailment." *Id.* (citing *Estelle*, 429 U.S. at 106). While deliberate indifference entails something more than mere negligence or even gross negligence, the standard is satisfied by something less than acts or omissions for the purpose of causing harm or with knowledge that harm will result. *Farmer*, 511 U.S. at 835-36. In short, "[d]eliberate indifference is the reckless disregard of a substantial risk of serious harm[.]" *Wright v. Taylor*, 79 F. App'x 829, 831 (6th Cir. 2003) (same); *see also Farmer*, 511 U.S. at 836-38 (equating "deliberate indifference" to the "recklessness" standard under criminal, not civil law). Furthermore, where prisoners receive medical attention, and the parties dispute the adequacy of the treatment, courts are "reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Therefore, disagreements over medical care cannot create a constitutional claim unless the medical care falls short of "contemporary standards of decency," *Estelle*, 429 U.S. at 103, or the medical care demonstrates an "unnecessary and wanton infliction of pain." *Durham v. Nu'Man*, 97 F.3d 862, 868 (6th Cir. 1996) (quotation marks omitted).

Proof of deliberate indifference "requires that an official who actually knew of the serious medical need possessed a sufficiently culpable state of mind in denying the medical care." *Loggins v. Franklin Cnty., Ohio*, 218 F. App'x 466, 472 (6th Cir. 2007) (internal citation and quotation marks omitted). "[T]he subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot

be proved by factually unsupported, conclusory opinions of the court or of the prisoners or their representatives." *United States v. Michigan*, 940 F.2d 143, 154 n.7 (6th Cir. 1991). The plaintiff bears the burden of proving subjective knowledge, but he may do so with ordinary methods of proof, including by using circumstantial evidence. *Farmer*, 511 U.S. at 842. In fact, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* Therefore, we turn to addressing whether Stevens can prove the subjective component of his claim as to Gooch.

Stevens argues that Gooch had subjective knowledge of his need for medical treatment because Gooch was involved in the denial of an x-ray, had a conversation with Stevens about the scheduling of ankle surgery, and knew that the grievance system was failing.

First, with respect to the x-ray, Stevens argues that Gooch was aware of the injury on October 21, 2010, when Stevens was denied the diagnostic x-rays. However, Gooch testified that he would never make a decision to deny an inmate an x-ray recommended by a physician and would never authorize such a decision be made. When asked directly whether he remembered a telephone call about the x-ray he said, "[n]o, I do not, and I don't believe I got that call." Stevens alleges that a jury could conclude from the circumstances that Gooch received a telephone call for advice about the x-rays, became aware of his injury when he refused the x-rays, and was therefore deliberately indifferent to his serious medical condition. However, proof of deliberate indifference requires that

an official *actually* knew of the serious medical need. Stevens's factually unsupported opinion that Gooch knew about his injury is insufficient as a matter of law.

Next, Stevens argues that Gooch admitted that, in May 2011, Stevens asked him when he was going to have surgery and why it was taking so long and that Gooch told him he was "getting everything took care of, scheduling and everything." Stevens argues that this proves knowledge of the injury and participation in his treatment plan. However, this conversation does not establish that Gooch consciously disregarded Stevens's ankle injury. Absent evidence of actual knowledge or personal involvement, Gooch cannot be held individually liable under the Eighth Amendment for Stevens's claims related to his medical care. *Dajani v. Montgomery Cnty., Ky.*, 59 F. App'x 740, 747-48 (6th Cir. 2003) (individual defendants could not be held liable where plaintiff failed to present evidence of defendants' actual knowledge of the medical decision).

Finally, Stevens argues that he submitted grievances about medical treatment, but received no response. Specifically, Stevens alleges that Gooch personally read all grievances and was concerned they were not all reaching him, but failed to adequately investigate or correct the system. Stevens argues that a jury might reasonably conclude that Gooch's inaction resulted from a conscious decision not to fix the system, thereby risking inmate welfare. However, there is no factual support for Stevens's conclusory statement that Gooch's handling of the potential problems with the grievance system was the result of a conscious decision not to fix the system. Gooch testified that he

investigated the matter and the results of his investigation were inconclusive. Gooch further stated that the issue is something he addressed and continues to address periodically with the staff. Accordingly, Stevens's conclusory opinions fail to establish Gooch's subjective knowledge.[2]

In sum, Stevens argues that the district court summarily decided this case based on Gooch's testimony that he did not know what was going on with Stevens and therefore rejected inferences showing otherwise. While the requisite knowledge of a substantial risk may be inferred from circumstantial evidence, there is simply insufficient evidence to do so in this case.

## IV.  CONCLUSION

The district court's grant of summary judgment in favor of Defendants is **AFFIRMED**.

---

[2] To the extent that Stevens argues that Gooch is liable for the actions of Nurse Brown and other employees, "[r]espondeat superior is not a proper basis for liability under § 1983," and Stevens would have to show at a minimum, that the supervisor "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006) (internal quotation marks omitted). Stevens has set forth no evidence establishing that Gooch implicitly authorized, approved, or knowingly acquiesced in decisions made by his staff about Stevens's medical treatment.